IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>WILLIE JAMES YORK and CORI MICHELLE BENSON,<br><br>　　　　　Defendants. | No. 24-CR-4080-LTS-KEM<br><br>**REPORT AND RECOMMENDATION** |

Defendants Cori Michelle Benson and Willie James York both filed motions to suppress evidence obtained after a traffic stop of their vehicle. Docs. 77, 84. Defendant Benson also moved for leave to file an untimely suppression motion. Doc. 76. Defendants argue that law enforcement lacked reasonable suspicion to stop their vehicle due to inoperable taillights because video evidence shows the taillights in working order. The Government resists, arguing that Iowa law requires all originally installed lights to work and at least one light was partially out. Docs. 88, 90.

I held an evidentiary hearing on September 15, 2025. Doc. 93. At the hearing, the following witnesses testified:

- Woodbury County Sheriff's Office Deputy Devon Groenhagen; and
- Woodbury County Sheriff's Office Deputy Troy Tadlock.

I also admitted the following exhibits into evidence:

- Exhibit 1 (Doc. 88-2) – Video clip from Deputy Tadlock's dash camera;
- Exhibit 2 (Doc. 88-3) – Video clip from Deputy Tadlock's body camera;
- Exhibit 3 (Doc. 88-4) – Video screenshot;
- Exhibit 4 (Doc. 88-5) – Video screenshot;
- Exhibit 5 (Doc. 88-6) – Photograph taken by investigator; and

- Exhibit 6 (Doc. 88-7) – Deputy Tadlock's warning to repair taillight issued to Benson after the traffic stop.[1]

I **deny** Benson's motion for leave to file an untimely suppression motion (Doc. 76), and I recommend **denying** the motions to suppress (Docs. 77, 84).

## I. BACKGROUND[2]

Near midnight on October 1, 2024, Deputy Groenhagen was helping another officer with a traffic stop southbound on the interstate in a construction zone. While sitting in his patrol vehicle, Deputy Groenhagen saw a silver BMW pass by at a slower rate of speed than other passing vehicles and veer toward the traffic cones demarking the closed lane. A little further south on the interstate, Deputy Tadlock was also on patrol and observing traffic. Since Deputy Groenhagen was already involved in a traffic stop, he relayed to Deputy Tadlock that he had observed a silver BMW with a particular license plate traveling southbound slow significantly when passing and almost hit a traffic cone.

Shortly thereafter, the BMW drove by Deputy Tadlock. Deputy Tadlock began following the vehicle in his marked patrol car. He testified that while following the BMW, he observed that the vehicle had taillights out on both sides.[3] As soon as they exited the single lane construction zone, Deputy Tadlock activated his emergency lights to initiate a traffic stop. Defendant Benson was driving the vehicle, and Defendant York and another individual were passengers. Deputy Tadlock told the occupants he had

---

[1] I cite to the exhibits filed in connection with Benson's motion; duplicates of these exhibits were also filed and admitted in connection with the Government's resistance to York's suppression motion (Doc. 90).

[2] The facts in the background section are taken from the testimony at the suppression hearing unless otherwise noted.

[3] He initially testified that he observed both taillights partially out when the vehicle drove by, but after being impeached with his police report on cross-examination, he agreed that his police report contained the better recollection.

2

stopped the vehicle because a taillight was out. Ex. 2, 1:24. Deputy Tadlock quickly discovered Benson's license was suspended, and a search of the car following a K-9 alert revealed narcotics and firearms. At some point, Deputy Groenhagen arrived on the scene, and he testified that he observed bulbs out on the driver's side rear lights, but not on the passenger's side (in retrospect, at the hearing, he said he could see lights out on the passenger's side in pictures as well).

The parties dispute whether the video evidence supports the deputies' testimony that any of the BMW's rear lights were out. When Deputy Tadlock originally pulled the BMW over, the right blinker and brake lights were on. *See* Ex. 1, Ex. 2. About four minutes into the traffic stop, Deputy Tadlock asked Benson to exit the vehicle so he could show her the broken light, and he requested she turn off her blinker. Ex. 2, 3:55-4:20. Benson appeared to turn off the blinker and brake lights and turn on her emergency flashers. *Id.* Deputy Tadlock then asked Benson to turn the flashers off, but before she did so, he began questioning her about the status of her license. Thus, the video evidence shows the vehicle with its lights on in two different configurations.

The Government offered a photo of the BMW's lights taken by an investigator on the scene (Exhibit 5), and Deputy Tadlock circled the portions that he believed were out:[4]

---

[4] Deputy Tadlock added blue circles to Government Exhibit 5 during the suppression hearing, but the annotated image was not offered as an exhibit, and the court recreated Deputy Tadlock's circles.



Deputy Tadlock testified that the BMW's rear lights consisted of three portions on each side: a top light that served as the turn signal, a middle light that served as the taillight, and a bottom light that served as the brake light. Deputy Tadlock testified that the entire row of bottom lights was out on the driver's side (brake light) and that the right portion of the middle light was out on the passenger's side (taillight).

      The investigative photo (Exhibit 5) and screenshots submitted by the Government (Exhibits 3 and 4) appear to have been taken after the four-minute mark in the dash camera and body camera videos, after Benson turned her brake lights off and flashers on. When Deputy Tadlock originally pulled the BMW over, the lights looked like this:[5]

---

[5] Screenshot by the court taken from Government Exhibit 2 at 4:15.



During cross-examination, Deputy Tadlock admitted that during the first four minutes of the video, both the brake lights were illuminated. He explained that the middle portion of lights out on the passenger's side appeared differently when the right blinker was on, which is why he asked Benson to turn the blinker off when showing her the light during the traffic stop.

## II. DISCUSSION

### A. Timeliness of Benson's Motion

Benson filed her motion to suppress after the deadline to file pretrial motions had expired as to her (York was arrested later, and his motion was timely filed). Benson moved for leave to file her motion to suppress out of time.

5

Benson made her initial appearance and was released on November 21, 2024. Doc. 12. The trial management order issued that same day set the pretrial-motions deadline for December 19, 2024. Doc. 16. Benson moved to continue the trial date on December 26, 2024, noting counsel was reviewing discovery and the parties were engaged in plea negotiations. Doc. 22. On February 25, 2025, Benson again moved to continue after receiving a plea agreement from the Government that she needed to review. Doc. 33. In early March 2025, a petition issued accusing Benson of pretrial-release violations, including failing to appear for urinalysis tests and treatment sessions. Docs. 35, 40. A summons was issued and executed for her appearance at a revocation hearing. Doc. 36. Benson failed to appear at the hearing on March 12, 2025, and her attorney and probation officer indicated they had not heard from her. Doc. 41. A warrant issued for her arrest. *Id.*

About three months later, on June 11, 2025, Benson was arrested. Doc. 47. The Government submitted a status report on June 24, indicating "[p]lea negotiations . . . were interrupted by defendant's absconding from pre-trial supervision." Doc. 58. That same day, Benson moved to continue trial, noting counsel needed to discuss the updated plea agreement with Benson. Doc. 59. Counsel indicated the belief that the case would be resolved by plea. *Id.*

On August 12, 2025, Benson moved for leave to file an untimely motion to suppress. Doc. 76. The motion indicated Benson had been engaged in plea negotiations at the beginning of the case; she missed a court date and a warrant issued; and upon her arrest, she had once again been engaged in plea negotiations. *Id.* The motion indicated Benson was not willing to plead guilty and wanted to challenge the initial traffic stop of her vehicle. *Id.* The Government resisted, arguing that the deadline to file suppression motions expired in December 2024 and that good cause did not exist to reset the deadline. Docs. 80, 81. Defendant did not file a reply.

6

The court may find that a party forfeited an issue by failing to raise it in a timely pretrial motion. Federal Rule of Criminal Procedure 12(c) provides:

> (1) Setting the Deadline. The court may, at the arraignment or as soon afterward as practicable, set a deadline for the parties to make pretrial motions . . . .
> (2) Extending or Resetting the Deadline. At any time before trial, the court may extend or reset the deadline for pretrial motions.
> (3) Consequences of Not Making a Timely [Pretrial Motion]. If a party does not meet the deadline for making a [pretrial] motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause.[6]

"Good cause" is "a flexible standard that requires consideration of all interests in the particular case."[7] The Eighth Circuit has held that good cause requires proof of "both cause and prejudice."[8]

Here, I do not find good cause for Benson's failure to timely file a suppression motion within the pretrial-motions deadline. The Eighth Circuit has held a court does not abuse its discretion by refusing to consider an untimely suppression motion when the defendant missed the original deadline because he was "engaged in extensive plea negotiations" and wanted "to retain leverage for his plea options."[9] The Eighth Circuit has also recognized that delay caused by a defendant absconding from pretrial release

---

[6] Rule 12 was amended in 2014 and omitted using the term "waiver." The advisory committee notes explain that waiver "ordinarily refers to the intentional relinquishment of a known right," but Rule 12 does not require "any determination that a party who failed to make a timely motion intended to relinquish a defense, objection, or request that was not raised in a timely fashion." **Fed. R. Crim. P. 12, advisory committee notes to the 2014 amendment**.

[7] *Id.*

[8] *United States v. Fogg*, 922 F.3d 389, 391 (8th Cir. 2019).

[9] *United States v. Trobee*, 551 F.3d 835, 838 (8th Cir. 2009).

may support a court's refusal to extend the pretrial-motions deadline.[10] Here, Benson's motion does not address the good-cause standard and sets forth no basis why the motion could not have been filed earlier in time. At the very least, it seems the motion could have been filed three months earlier if not for Benson's absconding while on pretrial release. At the hearing, Benson argued only that the Government would not be prejudiced by the untimely motion, since her codefendant had also filed a suppression motion raising the same issue.

I do not find that good cause exists to reset the pretrial-motions deadline as to Benson. Thus, I recommend denying Benson's motion to suppress on timeliness grounds (although I also address the merits).

### B. Initial Stop

The Fourth Amendment protects people "against unreasonable searches and seizures."[11] "A traffic stop is a seizure and 'must be supported by reasonable suspicion or probable cause.'"[12]

> "A reasonable suspicion is a 'particularized and objective' basis for suspecting criminal activity by the person who is stopped." Reasonable suspicion is determined by "looking at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing based on his own experience and specialized training to make inferences from and deductions about the cumulative information available." "Reasonable suspicion must be supported by more than a mere hunch, but the likelihood of criminal

---

[10] *United States v. Trancheff*, 633 F.3d 696, 698 (8th Cir. 2011) (per curiam) (no abuse of discretion in failing to find good cause based on "[t]he desire to suppress incriminating evidence," "the retention of new counsel," and that defendant "caused the waiver by absconding from the district for over four years").

[11] **U.S. Const. amend IV**.

[12] *United States v. Martin*, 15 F.4th 878, 881 (8th Cir. 2021) (quoting *United States v. Houston*, 548 F.3d 1151, 1153 (8th Cir. 2008)).

activity need not rise to the level required for probable cause, and it falls considerably short of satisfying the preponderance of the evidence standard."[13]

"A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct."[14] The Fourth Amendment does not prohibit pretextual stops; as long as an officer has "reasonable suspicion or probable cause to stop for a traffic violation, 'any ulterior motivation on the officer's part is irrelevant.'"[15] The Government bears the burden of proof.[16]

Iowa Code § 321.387 provides:

> Every motor vehicle . . . shall be equipped with a lighted rear lamp or lamps, exhibiting a red light plainly visible from a distance of five hundred feet to the rear. All lamps and lighting equipment originally manufactured on a motor vehicle shall be kept in working condition or shall be replaced with equivalent equipment.

At the very least, I find that the video evidence supports that a portion of the passenger's side taillight was out. Both before and after the four-minute mark, in both light configurations, the middle right portion of the passenger's side taillight appears dark. I credit Deputy Tadlock's testimony that he could see a bulb out while following the BMW—this is consistent with Deputy Tadlock's actions at the scene, such as immediately telling the occupants of the vehicle that he had stopped them because of a broken taillight and requesting that Benson turn her right blinker off to better show her

---

[13] *Id.* at 882 (cleaned up) (quoting *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005); *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Roberts*, 787 F.3d 1204, 1209 (8th Cir. 2015)).

[14] *United States v. Sanchez,* 572 F.3d 475, 479 (8th Cir. 2009) (quoting *Arvizu*, 534 U.S. at 277).

[15] *United States v. McLemore*, 887 F.3d 861, 864 (8th Cir. 2018) (quoting *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016)).

[16] *United States v. Adler*, 590 F.3d 581, 583 (8th Cir. 2009).

9

the missing taillight. Although Benson's taillights worked sufficiently to provide illumination on either side, under Iowa law, taillights are noncompliant if even a portion of the original bulbs are out.[17] Accordingly, I recommend finding that reasonable suspicion supported Deputy Tadlock's initial stop.

### III. CONCLUSION

I **DENY** Benson's motion for leave to file an untimely suppression motion. Doc. 76. I recommend **DENYING** Benson's motion to suppress (Doc. 77) and York's motion to suppress (Doc. 84).

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within seven days after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections.[18] Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[19] Failure to object to the Report and Recommendation waives the right to de

---

[17] *See also* **United States v. Burnside**, 795 F. App'x 475, 475-76 (8th Cir. 2020) (per curiam) (upholding traffic stop when "[t]he vehicle was originally manufactured with two license plate lamps, but the left lamp was not illuminated," as failure to keep both lamps in working order either violated § 321.387 or was an objectively reasonable mistake of law, even though single working light provided sufficient illumination to read the license plate from the distance required by another statute).

[18] **LCrR 59**.

[19] *See* **Fed. R. Crim. P. 59**.

novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[20]

**DATED** September 24, 2025.

*Kelly K.E. Mahoney* (signature)
Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[20] *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).