# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> WILLIE JAMES YORK and CORI MICHELLE BENSON, <br><br> Defendants. | No. CR24-4080-LTS-KEM <br><br> **ORDER ON REPORT AND RECOMMENDATION** |

     This case is before me on a Report and Recommendation (R&R) in which the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge, recommends that I deny the motions to suppress evidence filed by defendants Willie James York (Doc. 84) and Cori Michelle Benson (Doc. 77), along with Benson's motion (Doc. 76) to file an untimely motion to suppress. Doc. 94. York, the Government and Benson have filed objections. Docs. 95, 97, 98. The Government has filed responses (Docs. 96, 99) to both defendants' objections.

## I.     BACKGROUND

     Shortly before midnight on October 1, 2024, Benson was driving southbound on the interstate with York as a passenger. Doc. 94 at 2. Woodbury County Sheriff's Deputy Troy Tadlock stopped Benson, claiming her taillight was out. *Id*. at 2-3. Woodbury County Sheriff's Deputy Devon Groenhagen later arrived on the scene to assist Tadlock. *Id*.

     Based on evidence found during the stop, a Grand Jury returned an indictment (Doc. 3) charging York and Benson with conspiracy to distribute a controlled substance[1]

---

[1] In violation of 21 U.S.C §§ 841(a)(1), 841(b)(1)(A), 846 and 851.

and possession with intent to distribute and aiding and abetting the possession with intent to distribute a controlled substance.[2] York was also charged with possession of a firearm during and in furtherance of a drug trafficking crime[3] and possession of a firearm by a prohibited person.[4] *Id.* York and Benson seek to exclude evidence gathered from the stop. The Government resists.

Judge Mahoney held an evidentiary hearing on September 15, 2025. Doc. 94 at 1. The Government called Groenhagen and Tadlock as witnesses. *Id.* at 1-3. Judge Mahoney admitted the following exhibits: (1) Tadlock's dash camera video (Doc. 88-2, Ex. 1); (2) Tadlock's body camera video (Doc. 88-3, Ex. 2); a video screenshot showing the back of Benson's car (Doc. 88-4, Ex. 3); a second video screenshot showing the back of Benson's car (Doc. 88-5, Ex. 4); a photograph taken by an investigator (Doc. 88-6, Ex. 5) and the warning to repair taillight Tadlock issued to Benson following the traffic stop (Doc. 88-7, Ex. 6). Doc. 94 at 1-2. Judge Mahoney issued the R&R on September 24, 2025. *Id.* at 11.

## II. THE R&R

### A. *Findings of Fact*

Judge Mahoney made findings of fact. As discussed below, York, Benson and the Government have each asserted various objections to those findings of fact. Based on my de novo review of the record, including the transcript (Doc. 102) of the suppression hearing, I agree with Judge Mahoney's findings. As such, I adopt them without modification and incorporate them here by reference.

---

[2] In violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(a), 851 and 18 U.S.C. § 2.

[3] In violation of 18 U.S.C. § 924(c)(1).

[4] In violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3) and 924(a)(8).

2

*B. Recommendations*

Judge Mahoney denied Benson's motion for leave to file an untimely suppression motion. Doc. 94 at 2. Further, she recommends denying both motions to suppress based on her finding that Tadlock had reasonable suspicion that at least one of Benson's taillights had an inoperable bulb. *Id.* at 9-10.

## III. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV.  DISCUSSION

### A.  *Objections to the R&R*

#### 1.  *York's Objections*

York objects to Judge Mahoney's conclusion that the stop was lawful. First, he questions whether she properly relied on law enforcement testimony stating that there were issues with the taillights because, he claims, "the lights appear to be working in the video." Doc. 95 at 2. Specifically, he objects to the following passage from the R&R:

> About four minutes into the traffic stop, Deputy Tadlock asked Benson to exit the vehicle so he could show her the broken light, and he requested she turn off her blinker. Ex. 2, 3:55-4:20. *Benson appeared to turn off the* blinker and *brake lights* and turn on her emergency flashers. *Id*.

Doc. 95 at 2 (emphasis added by York). York states: "Brake lights are activated by depressing the brake pedal. Benson was not in the vehicle; the brake lights would necessarily be off when the photo was taken." *Id*. The substance of York's objection is unclear. However, Exhibit 1 confirms Judge Mahoney's description. Before Benson stepped out of the car, her right blinker and brake lights were on; after she stepped out her brake lights were off and her emergency flashers were on. Ex. 1, 4:10-4:40. Because Judge Mahoney accurately described the events, this objection is overruled.

Next, York questions whether Exhibit 5, a photograph taken at the scene, accurately depicts the vehicle's taillights. Doc. 95 at 3-4. York argues that external light sources could have reflected off the taillights, rendering the photograph inaccurate. *Id*. Because he claims the photograph could be inaccurate, he requests I disregard Judge Mahoney's determination that the passenger's side taillight was out "[t]o the extent this

4

finding relies on" the photograph to support Tadlock's testimony. *Id*. However, Judge Mahoney did not rely only on the photograph to determine the taillight was out. Doc. 94 at 9. Instead, she reached this conclusion based on a combination of officer testimony and video evidence. *Id*. I will consider this objection below.

### 2. Benson's Objections

Benson objects to the following conclusions in the R&R: (1) good cause did not exist to excuse her untimely motion to suppress and (2) reasonable suspicion or probable cause supported the traffic stop. Doc. 98 at 2-3. Regarding the stop, Benson claims it was improper on two bases. *Id*. First, she argues that Tadlock's testimony was not credible. *Id*. Second, she argues the evidence did not support Tadlock's claim that he saw that the taillight was out before stopping Benson. *Id*.

### 3. Government's Objections

The Government agrees with Judge Mahoney that Benson did not demonstrate good cause to file an untimely motion to suppress and that the stop was lawful because at least one taillight was not fully functioning. Doc. 97 at 2. However, the Government asserts that neither of Benson's rear taillights were fully functioning. *Id*. at 1. Therefore, the Government objects to Judge Mahoney's findings omitting "that at least a portion of the rear taillight on the driver's side was out or not fully functioning properly" and to her legal conclusions omitting that the stop was lawful because both lights were not functioning properly. *Id*. at 1-2.

## B. Analysis
### 1. Untimely Motion

Rule 12 of the Federal Rules of Criminal Procedure governs pretrial motions, which include motions to suppress. Rule 12(c)(3) states, "If a party does not meet the deadline for making a [pretrial] motion, the motion is untimely." Under Rule 12(c)(3),

courts cannot consider untimely pretrial motions without "a showing of 'good cause,' which requires a showing of cause and prejudice." *United States v. Fry*, 792 F.3d 884, 888 (8th Cir. 2015); *see also United States v. Fogg*, 922 F.3d 389, 391 (8th Cir. 2019). In her R&R, Judge Mahoney discussed two cases analyzing good cause: *United States v. Trobee*, 551 F.3d 835 (8th Cir. 2009) and *United States v. Trancheff*, 633 F.3d 696 (8th Cir. 2011). Doc. 94 at 7-8.

In *Trobee*, the court considered whether the district court abused its discretion in "refusing to consider [the defendant's] motion to suppress," which the defendant filed three months after the deadline. 551 F.3d at 837-38. Although the defendant had not sought to extend the deadline before it passed, he claimed that good cause for the delay existed. *Id.* at 838. He argued good cause supported his delay because at the time of the deadline, he had been negotiating a plea and did not want to file a motion to suppress out of concern it would limit "leverage for his plea options." *Id.* Further, he argued a late-filed motion to suppress did not prejudice the Government. *Id.* The court remarked that courts are not required to grant extensions to motions deadlines because of plea negotiations, "particularly where a party allows a deadline to pass and then seeks retroactively to have it extended." *Id.* Further, the court stated, "The absence of prejudice or delay in the trial may be relevant to whether the district court is willing to grant relief, but those factors themselves do not require a finding of 'good cause.'" *Id.*

In *Trancheff*, the court determined that a defendant's "desire to suppress incriminating evidence" alone does not establish good cause. 633 F.3d at 698. Additionally, the court held that a delay caused by the defendant absconding did not establish good cause for a delayed motion. *Id.*

Here, Benson admits her motion was untimely. Doc. 76 at 1. Not only was it untimely, but she filed it nearly eight months after the deadline for pretrial motions expired on December 19, 2024. Doc. 16 at 3; Doc. 80 at 3 n.3. In her motion (Doc. 76) for leave to file an untimely motion to suppress, Benson failed to address the "good cause" standard. Instead, she merely stated that she had been negotiating for a plea deal

6

at various points, alluded to the fact that she had absconded from pretrial release[5] and announced that she now wanted to "pursue her right to challenge the Government's evidence against her through a suppression motion." *Id*. During the suppression hearing, Benson did not attempt to establish good cause for her delay. Doc. 102 at 46-47. Instead, she merely argued that the Government was not prejudiced because York had a hearing on the same issues and the trial date had already been continued. *Id*. at 47. In her objection (Doc. 98) to the R&R, Benson still fails to identify any grounds to find that good cause supported her delay. *Id*. at 1-2. Instead, she attempts to distinguish her case from *Trobee* and does not address *Trancheff*. *Id*.

Benson claims *Trobee* is inapplicable because "the defendant's motion in *Trobee* did not make an argument as to good cause and also the court had submitted a scheduling order specific to filing a motion to suppress." Doc. 98 at 1. Benson is correct that the defendant in *Trobee* did not argue why good cause existed when filing his untimely motion to suppress in the district court. *Trobee*, 551 F.3d 837. However, on appeal, Trobee argued "that his tardiness should be excused for good cause." *Id*. Because of this argument, the court analyzed when a defendant shows good cause for an untimely motion. *Id*. at 837-38. As for Benson's suggestion that this court's trial management order did not establish a deadline for filing a motion to suppress, she is wrong. Her trial management order (Doc. 16) set a deadline for "[a]ll motions not directly related to trial issues, including discovery motions, *motions to suppress*, motions to dismiss and motions for severance." *Id*. at 3 (emphasis added). Clearly there was a specific deadline for Benson to file a motion to suppress and she missed that deadline by almost eight months.

Benson then quotes a passage from *Trobee* stating that "the absence of prejudice or delay in the trial may be relevant to whether the district court is willing to grant relief, but those factors themselves do not require a finding of 'good cause.'" Doc. 98 at 1-2. This passage clearly states that lack of prejudice or delay alone does not require the court

---

[5] Benson absconded for nearly three months. Doc. 94 at 6.

7

to find good cause. Confusingly, Benson then argues that her untimely motion has neither prejudiced the Government nor delayed trial but does not otherwise argue that good cause exists.[6] *Id.* at 2.

Comparing Benson's situation to *Trobee* and *Trancheff* further shows the lack of good cause for her untimely motion. Like the defendant in *Trobee*, Benson delayed filing a motion to suppress because of plea negotiations and failed to file a motion to extend the motion deadline before it expired. While the defendant in *Trobee* filed his motion three months after the deadline, Benson filed her motion nearly eight months late. In *Trancheff*, the court found that the defendant's "desire to suppress incriminating evidence" alone did not establish good cause and that a delay caused by the defendant's absconding from pretrial release likewise did not constitute good cause. The same is true here. Because Benson failed to demonstrate good cause, her objection is overruled and her motion to suppress is denied as untimely.

### 2. *Traffic Stop*

Judge Mahoney correctly identified the applicable legal standards for the traffic stop. Doc. 94 at 8-10. Unless there was reasonable suspicion or probable cause that at least a portion of Benson's taillights were out, the stop was unlawful. York and Benson claim there was not reasonable suspicion that a bulb was out. They argue (1) Tadlock was not a credible witness and (2) the photographic and video evidence did not sufficiently corroborate Tadlock's testimony.

#### a. *Credibility Determination*

Benson challenges Judge Mahoney's determination that Tadlock testified credibly. Doc. 98 at 2. Specifically, he contends Tadlock's testimony was not credible because of

---

[6] The Government claims Benson has both prejudiced the Government and delayed trial. Doc. 99 at 3-4.

impeachment during the hearing. *Id.* Tadlock first testified that he observed Benson's taillights were out while parked on the interstate median. Doc. 102 at 23. On cross-examination, however, he was confronted with his police report, in which he had written that he noticed the taillights after he began following Benson. *Id.* at 32-33.

As noted above, I have read the transcript (Doc. 102) of the suppression hearing in its entirety. *See United States v. Azure*, 539 F.3d 904, 910 (8th Cir. 2008) ("[D]e novo review requires that the district court either listen to the tape of the hearing or read the hearing transcript."). Upon review, I agree with Judge Mahoney that Tadlock testified credibly. Like Judge Mahoney, I credit his testimony that "he could see a bulb out while following" Benson. Doc. 94 at 9. I reach this conclusion for two reasons. First, Tadlock and Groenhagen provided coherent and consistent narratives. Doc. 102 at 6-11, 22. Second, Tadlock's actions after stopping Benson were consistent with him having stopped her for a broken taillight. He explained he had stopped her because of the taillight, offered to show her the taillight and even wrote her a warning citation for the taillight. Doc. 102 at 27, 37; Doc. 88-7. This overall consistency outweighs any discrepancy between Tadlock's testimony and his report as to when he first noticed the broken taillight. Benson's objections based on Tadlock's credibility are overruled.

### b. *Lack of Corroborating Evidence*

Tadlock testified that he saw the taillights out. Doc. 102 at 41. Both York and Benson argue that the video and photo evidence does not sufficiently corroborate his testimony. However, when I view Tadlock's dash and body camera footage, I agree with Judge Mahoney that "[a]t the very least, . . . the video evidence supports that a portion of the passenger's side taillight was out."[7] Doc. 94 at 9; Ex. 1, 3:40; Ex. 2, 4:30.

---

[7] Because the Government's objection leads to the same outcome, I find it unnecessary to consider. Therefore, the objection is overruled.

9

A court may find probable cause based solely on officer testimony without extrinsic proof. *See United States v. Mendoza*, 677 F.3d 822, 827-28 (8th Cir. 2012); *see also United States v. Herbst*, No. 17-CR-4059, 2018 WL 445532, at *11 (N.D. Iowa Jan. 16, 2018) ("There is no requirement of extrinsic proof that a traffic violation occurred, rather, one officer's credible testimony may be sufficient to establish probable cause."). However, officer testimony cannot be accepted if it is controverted by extrinsic evidence. *See Mendoza*, 677 F.3d at 827. York and Benson have not presented any such evidence.

Benson challenges whether Tadlock would have been able to see a burnt-out taillight while he followed Benson, stating the dash camera video shows "he would never have been close enough to observe the lights." Doc. 98 at 2. Benson further argues that Tadlock would not have been able to tell whether the bulbs were burnt out because they "were sandwiched in between the brake lights, turn signals, and other bulbs, and were somewhat illuminated by other bulbs in the taillight assembly." *Id*. This argument fails to controvert Tadlock's testimony for two reasons. First, it is unclear whether Tadlock's dash camera captured the entire time he followed Benson. Tadlock testified that he did not engage his lights until after he and Benson exited the construction zone. Doc. 102 at 38. Tadlock explained that his dash camera begins recording when he engages his lights and goes back 30 seconds. *Id*. at 28. Because of this, Tadlock may have been closer to Benson while going through the construction zone, which might not have been included in the dash camera video.

Second, Tadlock testified that his vision was more accurate than the video or photographic evidence because of how the lights reflected. *Id*. at 29. Neither York nor Benson attempted to challenge this claim. I find it plausible. In any event, the middle right of the passenger's side taillight appears dark in both Tadlock's dash and body camera footage while the surrounding lights are illuminated. Ex. 1, 3:40; Ex. 2, 4:30. Benson has not controverted Tadlock's testimony.

10

York challenges the evidence depicting the lights after Tadlock stopped the car. He posits that in Exhibit 5, a photograph taken at the scene, the passenger's side taillight might have appeared out because of how extrinsic light sources were hitting the car's rear lights. Doc. 95 at 4. In support, he argues that in the photograph, the passenger's side brake light beneath the passenger's side taillight appears on, "even though no one is in the vehicle to depress the brake pedal." *Id.* York further claims that the passenger's side taillight appearing out "does not necessarily indicate a bulb failure—rather, it is equally likely that it is an optical effect caused by the angle of the light sources." *Id.* York provides no support for his assertion or how he estimated it to be "equally likely."

After reviewing the dash camera and the body camera videos, I agree with Judge Mahoney that "the middle portion of the passenger's side taillight appears dark" while the lights around it are lit. Doc. 94 at 9; Ex. 1, 3:40; Ex. 2, 4:30. Even if York is correct that unlit bulbs might appear lit because of reflections from external light sources, this would not make a lit bulb appear unlit.[8] York's argument does not point to evidence that controverts Tadlock's testimony.

Like Judge Mahoney, I credit Tadlock's testimony that he could see a bulb out while following the BMW, which led him to pull Benson over. Doc. 94 at 9. As discussed above, this justification for the stop is corroborated by how he acted after he pulled her over, as well as by the dash and body camera video. Based on my de novo review of the record, I find that at least a portion of the passenger's side taillight was out, which gave Tadlock reasonable suspicion to stop the car. Because the stop was lawful, York and Benson's objections are overruled.

---

[8] Although York argues that it is unclear whether the car's lights were turned on in the photo (Doc. 95 at 4), the car's lights were clearly on in the dash and body camera videos.

11

## V. CONCLUSION

For the reasons set forth herein, I hereby **accept** the Report and Recommendation (Doc. 94) without modification. As a result:

1. Defendant Willie James York's objections (Doc. 95) are **overruled** and his motion (Doc. 84) to suppress is **denied**.

2. Defendant Cori Michelle Benson's objections (Doc. 98) are **overruled** and her motion (Doc. 76) to file an untimely motion to suppress and her motion (Doc. 77) to suppress are both **denied**.

3. The Government's objections (Doc. 97) are **overruled**.

**IT IS SO ORDERED** this 10th day of November, 2025.

_____
Leonard T. Strand
United States District Judge